UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| NICHOLAS D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-775-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Nicholas D. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 10).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 7, 8. Plaintiff also filed a reply brief. *See* ECF No. 9. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 7) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 8) is **GRANTED**.

## BACKGROUND

On May 11, 2011, an application for SSI was protectively filed on behalf of Plaintiff, who was then a child under the age of 18. Transcript ("Tr.") 22, 614. The application was initially denied on July 20, 2011, after which an administrative hearing was requested. Tr. 22. On October 10, 2012, Administrative Law Judge Michael Friedman ("ALJ Friedman") conducted a video hearing from New York, New York. Tr. 22, 36. Plaintiff and his mother appeared and testified

from Jamestown, New York, represented by Valerie Sylves, an attorney, Tr. 22. On October 25, 2012, ALJ Friedman issued an unfavorable decision finding Plaintiff not disabled. Tr. 22-32. On March 25, 2015, the Appeals Council denied Plaintiff's request for further review, making ALJ Friedman's October 25, 2012 decision the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

Thereafter, Plaintiff filled a complaint in the United States District Court for the Western District of New York, which resulted in remand for further administrative proceedings. Tr. 693. On April 11, 2018, the Appeals Council ordered a new hearing. Tr. 428. Thereafter, on November 5, 2018, Administrative Law Judge Maria Herrero-Jaarsma ("ALJ Herrero-Jaarsma") conducted a video hearing from Buffalo, New York. Tr. 363. Plaintiff appeared and testified from Jamestown, New York, and was represented by Nicholas Divrigilio, an attorney. Tr. 363, 383. At that hearing, Plaintiff amended the alleged onset date to request a closed period of disability beginning May 11, 2011 and ending the day he attained age 18, July 20, 2013. Tr. 363. ALJ Herrero-Jaarsma issued an unfavorable decision on November 19, 2018, finding Plaintiff not disabled. Tr. 363-76.

Plaintiff again filed a complaint in the United States District Court for the Western District of New York, and the parties subsequently stipulated to remand for further proceedings on December 13, 2019. Tr. 694-95. On May 19, 2020, the Appeals Council ordered a new hearing. Tr. 697. On February 4, 2021, Administrative Law Judge Stephen Cordovani ("the ALJ") conducted a telephonic hearing,[1] at which Plaintiff appeared and testified and was represented by Samantha Ventura, an attorney. Tr. 614, 633. Also appearing and testifying were medical expert Neli Cohen, Ph.D. ("Dr. Cohen"), of Mednick Associates LLC, and Michael Smith, an impartial vocational expert. Tr. 614. At the hearing, Plaintiff, through his attorney, confirmed the request

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 1007.

for a closed period of disability beginning May 11, 2011 and ending the day he attained age 18,

July 20, 2013. *Id.* Plaintiff's attorney also specifically affirmed that the current record was

complete. *Id.*

The ALJ considered the case *de novo* and issued an unfavorable decision on March 3, 2021,

finding Plaintiff not disabled. Tr. 614-25. Thus, the ALJ's March 3, 2021 decision became the

final decision subject to judicial review.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the

SSA's conclusions were supported by substantial evidence in the record and were based on a

correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §

405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive"

if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."

*Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.    The Sequential Evaluation Process

As noted above, Plaintiff was under age 18 at the time of the application and attained age

18 before the date of this decision. Therefore, in accordance with 20 CFR 416.924(f), the issue is

whether Plaintiff was disabled under section 1614(a)(3)(C) of the Act for the period before age 18.

An applicant under the age of 18 will be considered disabled as defined under the Act if he

"has a medically determinable physical or mental impairment, which results in marked and severe

functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C).

Under the Commissioner's regulations, an ALJ uses a sequential evaluation process to determine whether a child is disabled. 20 C.F.R. § 416.924(a)-(d). At the first step, the ALJ determines whether the child is engaged in any substantial gainful activity. 20 C.F.R. § 416.924(b). At the second step, the ALJ determines whether the child has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.924(c). At the third step, the ALJ determines whether the child's impairment or combination of impairments meets, medically equals or functionally equals the criteria included in the listing of impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). If a child's impairment or combination of impairments medically meets or equals a listed impairment, the child will be found to be disabled. 20 C.F.R. § 416.926. If this is not the case, the ALJ will assess the functional limitations caused by the child's impairment or impairments. 20 C.F.R. § 416.926a(a). If these limitations are the same as the disabling functional limitations caused by any listed impairment, the ALJ will find that the child's condition is functionally equivalent in severity to the listed impairment, and the child will be found disabled. *Id*.

In determining whether the child's impairment or combination of impairments meets or medically equals a listing, the ALJ must assess the child's functioning in six domains:

    1. Acquiring and using information;

    2. Attending and completing tasks;

    3. Interacting and relating with others;

    4. Moving about and manipulating objects;

    5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. §§ 416.926a(d). A "marked" limitation exists when the impairment or cumulative effect of the impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). If the child has an impairment that meets, and medically or functionally equals the listings, and the impairment meets the Act's duration requirement, the ALJ will find the child disabled. 20 C.F.R. § 416.924(d).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his March 3, 2021 decision:

1. The claimant was born on July 21, 1995. Therefore, he was an adolescent on May 19, 2011, the date application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since May 19, 2011, the application date (20 CFR 416.924(b) and 416.971 *et seq*.).

3. From May 11, 2011 to July 20, 2013, the claimant had the following severe impairments: schizoaffective disorder; bipolar disorder; anxiety disorder; psychotic disorder with marked stressors; infantile cerebral palsy, unspecified (20 CFR 416.924(c)).

4. From May 11, 2011 to July 20, 2013, The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since May 19, 2011, the date the application was filed (20 CFR 416.924(a)).

Tr. 614-25.

Accordingly, the ALJ determined that, based on the application for supplemental security income protectively filed on May 19, 2011, the claimant is not disabled under section 1614(a)(3)(C) of the Social Security Act. Tr. 625.

## **ANALYSIS**

Plaintiff asserts a single point of error, challenging the ALJ's findings in three of the six functional domains. *See* ECF No. 7-1 at 15-21. Specifically, Plaintiff argues that the ALJ erred in finding that Plaintiff had less than marked limitations in attending and completing tasks and caring for oneself and no limitation in interacting and relating with others. *Id*. Plaintiff further argues that the ALJ cherry-picked the evidence to arrive at these findings and should have found marked limitations in these three domains. *Id*.

The Commissioner argues in response that substantial evidence of record supports the ALJ's finding that Plaintiff had a less than marked limitation in the domains of attending and completing tasks and caring for oneself, and no limitation in interacting and relating with others; and therefore, Plaintiff did not have a "marked" limitation in two or more of the six domains or an "extreme" limitation in one domain of functioning. *See* ECF No. 8-1 at 7-15

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that there is substantial evidence to support the ALJ's findings that Plaintiff had less than a marked limitation in the domains of attending and completing tasks and caring for oneself and no limitation in the domain of interacting and relating with others. As an initial matter, the record is devoid of any medical opinion indicating that Plaintiff had a marked limitation in any functional domain. Furthermore, the ALJ pointed to significant evidence throughout the record to support his findings, including Plaintiff's educational records, which indicated no academic delays or behavioral problems; Plaintiff's treatment records; and the medical opinion evidence.  Accordingly, the Court finds no error.

a) **Attending and completing tasks domain.**

Plaintiff first challenges the ALJ's finding that Plaintiff had less than a marked limitation in the domain of attending and completing tasks. *See* ECF No. 7-1 at 15-16. This domain addresses how well a child is able to "focus and maintain [] attention, and how well" the child begins, carries through, and finishes his activities, including the pace at which he performs activities and how easily he can change activities. 20 C.F.R. § 416.926a(h)(iv). The Regulations provide that a school-aged child should be able to focus his attention in a variety of situations to follow directions, remember and organize his school materials, and complete classroom and homework assignments. *Id.* The child should also be able to concentrate on details and not make careless mistakes in his work, other than mistakes that other children his age, who do not have impairments, would make. *Id.* Further, the child should be able to change his activities or routines without distracting himself or others, and stay on task and in place when appropriate; he should be able to sustain attention well enough to participate in group sports, read by himself, and complete family chores; and should be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. *Id.*

The regulations also set forth some examples of limited functioning in this domain that children of different ages might have. *See* 20 CFR 416.926a(h)(3); SSR 09-4p. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods.  In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in attending and completing tasks are: (i) is easily startled, distracted, or over-reactive to everyday sounds, sights, movements, or touch; (ii) is slow to focus on, or fails to complete, activities of interest (*e.g.*, games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; (v) requires extra supervision to remain engaged in an activity; or (vi) cannot plan, manage time, or organize self in order to complete assignments or chores.

Plaintiff argues that the ALJ should have found a marked limitation in this domain based on Plaintiff's two hospitalizations in late 2011 and early 2012. *See* ECF No. 7-1 at 15-16. Contrary to Plaintiff's argument, however, the ALJ discussed significant other evidence in the record demonstrating that Plaintiff's limitation in this domain was less than marked. For example, the ALJ observed that Plaintiff's educational records indicated he did well in school; had no delays in reading, writing, or math; and was able to do his homework and complete chores. Tr. 622, 255, 345. *See Sarah H. o/b/o A.H. v. Saul, Comm'r of Soc. Sec.*, No. 6:20-CV-6209-MJR, 2021 WL 2451528, at *6 (W.D.N.Y. June 16, 2021) (affirming ALJ's finding of a less than marked limitation in attending and completing tasks where the child met or exceeded the standards in all subjects for the school year and made the honor roll, and his report card rated him satisfactory at staying organized; working neatly and carefully; completing work on time; and, completing and returning homework); *see also Mercedes o/b/o B.M.A. v. Comm'r of Soc. Sec.*, No. 18 CIV. 11440 (GWG),

2020 WL 4747501, at *4 (S.D.N.Y. Aug. 17, 2020) (affirming the ALJ's finding that the child had no limitation in her ability to attend and complete tasks based, in part, on her ability to complete her homework).

The ALJ also noted the July 19, 2011 opinion of state agency consultant M. Malik, Pediatrics ("Dr. Malik"), who reviewed the record as of that date and opined that Plaintiff had no limitation in attending and completing tasks. Tr. 624, 260-61. Because Dr. Malik did not have the opportunity to review the entire record, notably Plaintiff's two hospitalizations, the ALJ reasonably assigned Dr. Malik's opinion only "some" weight. Tr. 624. *See Ellen A. v. Saul, Comm'r of Soc. Sec.*, No. 19-CV-1299F, 2021 WL 1087949, at *4 (W.D.N.Y. Mar. 22, 2021) (finding no error where, based upon a review of the medical evidence and opinions of record, as well as the ALJ's observation of the Plaintiff at the administrative hearing, the ALJ determined the plaintiff's severe impairments pose greater limitations than contained in the medical opinions of record); *Kearney v. Berryhill*, No. 1:16-CV-00652-MAT, 2018 WL 5776422, at *5 (W.D.N.Y. Nov. 2, 2018) ("The ALJ explained that he had credited aspects of Plaintiff's testimony regarding her limitations, and so assessed a somewhat more restrictive RFC than identified by the consultative examiners. The Court finds no error in this determination by the ALJ."). Thus, the ALJ did not err here by extending Plaintiff the benefit of the doubt and assessing a more restrictive limitation than opined by Dr. Malik.

The ALJ also discussed the testimony of medical expert and licensed clinical psychologist Dr. Cohen, who reviewed the entire record and opined there was nothing to show that Plaintiff had problems in this domain. Tr. 623, 642-43, 645. In fact, Dr. Cohen assessed none-to-less than marked limitations in this domain. Tr. 623, 645-46. Dr. Cohen testified that she reviewed Plaintiff's overall records during the relevant time period which reflected that his memory was

intact. Tr. 623, 643-44, 280, 284, 286, 288, 293, 296. Dr. Cohen also noted that in 2012, Plaintiff

was doing well in school with grades listed as A's and B's. Tr. 623, 255, 289, 298, 353, 354, 355,

359, 643-44.

The ALJ gave Dr. Cohen's testimony the "greatest" weight, noting that she based her

testimony on her review of the entire record, including Plaintiff's hospitalizations. Tr. 624. The

ALJ is permitted to rely upon the opinion of a medical expert, like Dr. Cohen, even though she did

not examine Plaintiff. *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (the Commissioner's

regulations permit the opinions of non-examining sources to constitute substantial evidence in

support of the ALJ's decision, and can even override a treating source opinion); *see also Heagney-*

*O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 126 (2d Cir. 2016) (the ALJ correctly gave

great weight to the opinion of a medical expert; even though he lacked a treating relationship

because his opinion was consistent with the objective medical evidence in the record.); *Botta v.*

*Colvin*, 669 F. App'x 583, 584 (2d Cir. 2016) (proper to rely on medical expert in assessing

claimant's functioning).

Furthermore, while Plaintiff accuses the ALJ of cherry-picking the record when he found

that Plaintiff had a less than marked limitation in this domain, the ALJ's finding was properly

based on the entire record. 20 C.F.R. § 416.926a(b). Plaintiff, on the other hand, challenges the

ALJ's finding in this domain based solely on his two hospitalizations (*see* ECF No. 7-1 at 15-16),

which, as noted above, were considered by Dr. Cohen in her review of the record and discussed

by the ALJ in his analysis of this domain.   Tr. 624, 649. Without more, Plaintiff has not

demonstrated that his limitation in this domain was marked or extreme.  Moreover, even if the

evidence demonstrated some limitation in this domain, that would not be enough, as Plaintiff must

produce evidence showing marked, *i.e.*, more than moderate, limitation in at least two functional

domains. *See* 20 C.F.R. §§ 416.926a(d); *see also Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) The question is not whether there is evidence to support disability; it is whether there is "more than a scintilla" of evidence supporting the ALJ's decision. *Moran*, 569 F.3d at 112. As discussed above, there is such evidence. Accordingly, the Court finds no error in the ALJ's finding of a less than marked limitation in the domain of attending and completing tasks.

   **b)  Caring for yourself domain.**

   The ALJ's finding in the domain of caring for yourself is likewise supported by substantial evidence. Tr. 623. This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways.  This includes how the child copes with stress and changes in the environment and how well the child takes care of his own health, possessions, and living area. 20 CFR 416.926a(k); SSR 09-7p.

   Social Security rules provide that a school-age child without an impairment should be independent in most day-to-day activities (*e.g.*, dressing and bathing), although he may still need to be reminded sometimes to do these routinely. The child should begin to recognize that he is competent in doing some activities but has difficulty doing others. The child should be able to identify those circumstances when he feels good about himself and when he feels bad.  The child should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. The child should also begin to demonstrate consistent control over his behavior and be able to avoid behaviors that are unsafe or otherwise not good for him.  At this age, the child should begin imitating more of the behavior of adults he knows. 20 CFR 416.926a(k)(2)(iv); SSR 09-7p.

As with the other domains, the regulations set forth some examples of limited functioning in this domain that children of different ages might have.  20 CFR 416.926a(k)(3); SSR 09-7p. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain.  Some examples of difficulty children could have in caring for themselves are: (i) continues to place non-nutritive or inedible objects in the mouth (*e.g.*, dirt, chalk); (ii) often uses self-soothing activities that are developmentally regressive (*e.g.*, thumb-sucking or re-chewing food); (iii) does not feed, dress, toilet, or bathe himself age appropriately; (iv) engages in self injurious behavior (*e.g.*, suicidal thoughts or actions, self-inflicted injury, or refusal to take medication), or ignores safety rules; (v) does not spontaneously pursue enjoyable activities or interests (*e.g.*, listening to music, reading a book); (vi) has restrictive or stereotyped mannerisms *(e.g.*, head banging, body rocking); or (vii) has disturbances in eating or sleeping patterns.

In this domain, the ALJ reasonably found that Plaintiff's limitation was less than marked. Tr. 623. In so doing, the ALJ observed that WCA Hospital records indicated Plaintiff was able to care for himself and that the overall record did not indicate any difficulties with care. Tr. 623, 280, 284, 286, 288, 293, 296. The ALJ also observed that consultative examiner Joseph Prezio, M.D. ("Dr. Prezio"), noted in June 2011 that Plaintiff was appropriately groomed. Tr. 623, 256. In addition, Dr. Cohen testified that, other than Plaintiff's hospitalization, which was precipitated by Plaintiff bringing a pocketknife to school (Tr. 658-59), she did not see evidence of dangerous behavior. Tr. 623, 652-53. Dr. Cohen further testified that Plaintiff had no more than moderate limitations, which occurred during the time of his hospitalization. Tr. 623, 315-16, 319, 324, 358-59, 649-50, 660-64. Dr. Cohen also observed that there was no clinical paranoia after Plaintiff's

hospitalization. Tr. 623, 281, 283, 285, 287, 290, 292, 354, 355, 653-55. The record further reflects that in March 2012, after his hospitalization earlier in the year, Plaintiff was doing well at home and at school. Tr. 345. Based on her review of the record, Dr. Cohen concluded that, from 2011 through 2013, Plaintiff's overall limitation in this domain was less than marked. Tr. 650. Accordingly, there is substantial evidence of record to support the ALJ's finding of a less than marked limitation in the domain of caring for yourself, and while Plaintiff may disagree with the ALJ's conclusions, her mere disagreement with the ALJ's findings does not warrant remand.

    c) **Interacting and relating with others domain.**

Substantial evidence also supports the ALJ's finding that Plaintiff had less than a marked limitation in the domain of interacting and relating with others. This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others.  Interacting and relating with others relates to all aspects of social interaction at home, at school, and in the community. Because communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community. 20 CFR 416.926a(i); SSR 09-Sp.

Social Security rules provide that a school-age child without an impairment should be developing more lasting friendships with children who are of the same age.  The child should begin to understand how to work in groups to create projects and solve problems.  The child should have an increasing ability to understand another's point of view and to tolerate differences (*e.g.*, playing with children from diverse backgrounds).  The child should attach to adults other than parents (*e.g.*, teachers or club leaders), and may want to please them to gain attention.  The child should be well

able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand. 20 CFR 416.926a(i)(2)(iv); SSR 09-Sp.

The regulations once again set forth some examples of limited functioning in this domain that children of different ages might have.   20 CFR 416.926a(i)(3); SSR 09-Sp As noted previously, the examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods.  In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty that children could have in interacting and relating with others are: i) does not reach out to be picked up and held by caregiver; (ii) has no close friends, or all friends are older or younger than the child; (iii) avoids or withdraws from people he knows, or is overly anxious or fearful of meeting new people or trying new experiences; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others (*e.g.*, in using verbal and nonverbal skills to express himself, in carrying on a conversation, or in asking others for assistance); or (vi) has difficulty speaking intelligibly or with adequate fluency.

Plaintiff argues that the ALJ arrived at this conclusion by cherry-picking and mischaracterizing the evidence. *See* ECF No. 7-1 at 16. However, the ALJ based his finding on the overall record, including Plaintiff's testimony, treatment records and the opinions of medical experts Dr. Malik and Dr. Cohen. Tr. 623-24.

First, the ALJ noted Plaintiff's testimony that he was occasionally bullied, but the ALJ also noted other evidence showing that Plaintiff had friends and got along with peers. Tr. 623, 255, 464, 467. Although Plaintiff had a history of poor familial relationships and suffered abuse by his mother and stepmother during his earlier years, later records show improvement in his relationship with his mother. Tr. 623, 285, 287, 290, 292, 316, 352-54, 355, 357. Plaintiff also said he was

close with his grandparents and missed his father. Tr. 623, 281, 283, 289, 292, 353, 355. The ALJ also noted that in February 2012, Plaintiff moved into his grandparents' house due to reported conflict with his mother. Tr. 623. 352, 354, 357. However, as of April 2012, visits with his mother were going well and by September 2012, the relationship had improved. Tr. 623, 281, 352, 355, 357. The ALJ also observed that Plaintiff denied behavioral issues in school. Tr. 623, 285. WCA Hospital outpatient records indicate that Plaintiff was cooperative with staff and was able to communicate his needs. Tr. 623, 280, 284, 286, 288, 293, 296.

In July 2011, Dr. Malik reviewed the record and opined that Plaintiff had no limitations in this domain. Tr. 624, 261. In March 2012, Plaintiff's pediatrician noted that Plaintiff had no behavior problems. Tr. 345. Based upon her review of the record, medical expert Dr. Cohen testified that there was not a lot of evidence showing that Plaintiff had a problem with social skills. Tr. 623, 647-48. *See Schisler*, 3 F.3d at 568; *Heagney-O'Hara*, 646 F. App'x at 126. Accordingly, substantial evidence supports the ALJ's finding of no limitation in the domain of interacting and relating with others. Tr. 623.

In support of his assertion that his limitation in this domain was marked, Plaintiff points to his pre-hospitalization behavior where he threatened others on a school bus. *See* ECF No. 7-1 at 17. However, Dr. Cohen testified that aside from that one incident, she did not see a pattern of such behavior. Tr. 290, 651. Plaintiff also points to his mother's report to therapist Sean Seibert, Ph.D. ("Dr. Seibert"), in September 19, 2012, that Plaintiff's behavior was erratic. *See* ECF No. 7-1 at 17. However, Plaintiff's mother also reported that Plaintiff's symptoms were only intermittent, and he had not taken any of his prescribed medications all summer. Tr. 358. Thus, contrary to Plaintiff's assertion, the ALJ's evaluation of the record does not constitute cherry-

picking. Instead, the ALJ considered the medical and other evidence in the record to reach his conclusion that Plaintiff had no limitation in the domain of interacting and relating with others.

Based on the foregoing, the ALJ cited substantial evidence in support of his conclusion that Plaintiff had less than marked limitations in the domains of attending and completing tasks and caring for oneself, and no limitation in the domain of interacting and relating with others, and Plaintiff provides no persuasive argument to the contrary. Accordingly, Plaintiff has not met his burden of showing that remand is warranted for the ALJ to reconsider Plaintiff's functioning in these domains. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration.").

Plaintiff's arguments amount to nothing more than an invitation for this Court to reweigh the evidence in a manner more favorable to him—arguments that are insufficient under the substantial evidence standard of review. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision."); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (stating that under the substantial evidence standard of review, it is not enough for claimant to offer a different interpretation of the evidence, he must demonstrate that no reasonable factfinder could have weighed the evidence as the ALJ did in his decision). Plaintiff's argument, therefore, fails.

Based on the foregoing, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). The substantial evidence standard is "a very

16

deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal citations omitted).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 8) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE